### BENJAMIN WILLIAMS v. EDMOND SHEPPARD.

This court on a writ of error, will only consider the point raised in the court below, as exhibited by the bill of exceptions ; and if that point respects the admissibility of the eviden.e, and its adaptedness to the form of the action, this court will not consider the sufficiency of the evidence to maintain the issue. If the plaintiff in error intended to question its sufficiency, or to have availed himself, either in the Common Pleas, or in this court, he should have demurred to the evidence, or called on the court to charge the jury, that if they believed the evidence to be true, it was not sufficient in law to sustain a verdict for the plaintiff.

Where it was proved, that money had been paid by the plaintiff below, and that he was compelled to do so, and the single question was, whether the payment was for the use of the plaintiff himself, or of the defendant, the apt form of action for the trial and determination of that question, is that, for money paid, laid out and expended.

The proprietors of a vessel are ordinarily considered as part owners in the nature of tenants in common, and not as partners.

This case came before the court on a writ of error to the Court of Common Pleas of the county of Cumberland.

The declaration contained a count for money paid, laid out and expended by Sheppard, to and for the use of Williams. The plea was the general issue. The verdict and judgment were rendered in favor of Sheppard. On the trial Williams took a bill of exceptions, containing the evidence of both parties, of which so much as is necessary to understand the matter decided by this court, will be found in the opinions delivered.

*Field* for the plaintiff in error, clamed a reversal of the judgment, because the evidence introduced by the plaintiff, was not adapted to sustain the count for money paid, laid out and expended, nor admissible under it. In his argument he read, and commented on 3 *Kent's Commentaries*, 97, 117, 124.

*L. Q. C. Elmer* for the defendant in error. He cited 8 *Term Rep.* 308; 3 *Kent.* 115; 10 *East* 264; 3 *Serg. and Lowber*, 340 1 *Starkie's cases*, 164.

EWING C. J. This case comes before us on a bill of exceptions taken upon the trial, in the Court of Common Pleas of the county of Cumberland. The plaintiff declared for money paid laid out and expended for the use of the defendant. The plea was non assumpsit. On the trial the plaintiff shewed, that in consequence of judgments and executions against himself and

one Henry Williams, as owners of a vessel called the Betsey and Nancy ; he had been compelled to pay one half of the expenses of a new suit of sails to the persons who had supplied the work and materials. Having thus shewn the compulsory payment of the money, he proposed to prove that it had been paid for the use of the defendant, and examined two witnesses, from both of whom, it appeared, that the defendant had been in the management and command of the vessel, and had run her, as it is called. One of them testified, that she had new sails put upon her, and he heard the defendant say he got the sails for his own accommodation, and if the plaintiff would not pay for them, he would sail the vessel one half of the time with the new sails, and the plaintiff might sail her the other half, without, but if the plaintiff would be a man and pay for one half, he might have them. The other witness testified to the like effect that the defendant said he bought the sails for his own use and conveniency, and if the plaintiff or one Sutton, (to whom the plaintiff had soon after sold the vessel) paid for one half, they might be on the vessel, and if not, he did not intend they should have them.

These witnesses being examined, it was agreed that the defendant should have the same right to move, to overrule the evidence as irrelevant, after introducing testimony on his part as if done before. The defendant then examined several witnesses ; and the plaintiff called some farther witnesses to rebut and explain the evidence on the part the defendant.

The defendant then insisted that the evidence on the part of the plaintiff was not competent and relevant. The court declared their opinion that it was competent and relevant, and refused to overrule it, and at the instance of the defendant's counsel, sealed the bill of exceptions.

Whether the defendant, Benjamin Williams, was in reality a part owner of the vessel in the name of his son Henry Williams, or whether he was merely making use of the vessel as captain or otherwise, if he procured the sails for his own accommodation and benefit, not intending to suffer them to remain on the vessel, or intending to permit them to be used only while the vessel was in his employ and not while in the employ of the plaintiff, unless the plaintiff should pay one half of the expenses ; or

in other words, pay a share of the expenses correspondent to his interest in the vessel, I am inclined to think the plaintiff having compulsorily paid the money was entitled to recover it, and in this form of action from the defendant, unless the latter should shew that the former had in some way ratified the purchase, or the sail had come to his use. The proprietors of a vessel are ordinarily considered as part owners in the nature of tenants in common, and not as partners; and although as respected the sail maker who furnished the work to the vessel under the direction of the captain, or one of the owners, all might be responsible, yet among themselves the ordinary rules of partnership do not apply, 3 *Kent. Com.* 117. But we are not permitted to carry our enquiry to this extent. The point raised in the court below, as exhibited by the bill, and whereby consequently, we are bound, respects the admissibility of the evidence, its adaptedness to this form of action, and not its sufficiency to maintain the issue on the part of the plaintiff.

If the defendant intended to question its sufficiency to entitle the plaintiff to recover or to have availed himself of its insufficiency either there, or here, he should have demurred to the evidence, or called on the court to charge the jury that if they believed the evidence to be true, it was not sufficient in law to sustain a verdict for the plaintiff. There is a marked distinction between the admissibility or competency or relevancy of evidence and its sufficiency. It may be insufficient, though rel evant, competent and admissible. In opening the case here, the counsel for the defendant below stated that it was proved the money was paid by the plaintiff and that he was compelled to do so, and that the single question was whether the payment was for the use of the plaintiff himself or of the defendant. Such being the question, there seems no form of action more apt for the trial and determination of it than that for money paid, laid out and expended. And evidence which conduces to prove that the payment was for the use of the defendant, was relevant to this question.

It was strongly insisted by the counsel of the defendant, that the sails when procured, became the property of the owners, because the defendant, whether part owner or only master, had a right to purchase them as proper repairs for the vessel, on the

Williams *v.* Sheppard.

responsibility of the owners; and hence, when they were compelled to pay for them, the payment was for their own use. But it is obvious this conclusion can only be drawn from a series of enquiries; Was the master authorized, under the circumstances of the case, to make repairs or create on that account, charges on the owners? Were not the owners at hand to order the proper repairs and procure the requisite materials, or were they absent when the state of the vessel required attention? If the defendant was part owner, did he procure the sails for his own use or for the common benefit of the concern? Did the sails come to the use of the owners, or conduce to the safety and productiveness of the vessel in the pursuit of their common interests? However proper these enquiries may have been in the case at large and to determine whether the verdict should have been for the plaintiff or for the defendant, they were in no wise proper with a view to decide on the admissibility of the evidence under examination.

A number, and among the most weighty of the arguments addressed to us on the part of the defendant, were founded upon testimony introduced by him, after the evidence had been given by the plaintiff, which it is now said was irrelevant and inadmissible. Now, howsoever strong may have been the facts thus proved by the defendant, and even if they were such as to entitle him to a verdict, yet they could not make the plaintiff's evidence irrelevant and inadmissible. He could have asked from the court to instruct the jury to that effect, not to declare the evidence of the plaintiff incompetent. The question before us upon the present bill of exceptions, is not whether, upon the whole case, the verdict should have been for the defendant, but simply whether the evidence of the plaintiff was admissible in the present form of action.

I believe it was admissible and can find no error in the matter to which the exception was taken in the court below.

FORD, J. It appears from the bill of exceptions in this case that Edmund Sheppard was the real owner of one half of an old and much decayed vessel, called the Betsey and Nancy, and that Benjamin Williams, the captain, was the ostensible owner of the other moiety. It came out on the trial, that his

son, Henry Williams, was the real owner of the moiety, but this seems to make no difference, as he had given his father an unlimited agency to act in all things concerning the vessel, in his place and stead.  A high dispute arose between these own-ers about the expediency of procuring for this old vessel a set of new sails, Williams being highly in favor of the measure, but Sheppard so decidedly against it, as to forbid its being done, and to couple with it an express notice, that he would be at no part of the expense.  Nevertheless, Williams procured the sails, and when they were made up he directed the different tradesmen to charge their bills to the *owners* of the vessel, and they did so.  Whether Williams, after that prohibition, pur-chased the new sails for the owners, or for himself exclusively of them, became a very important fact; but the bill of excep-tions shews, beyond the possibility of a doubt, that as between these parties, Williams purchased them for himself, and it was so understood by them both.  Certainly by Sheppard, for not only did he forbid the purchase and declare he would never pay for any part of them before they were provided, but disclaimed all interest in them uniformly afterwards,  He very soon sold his half of the vessel to Jonathan Sutton, but excepted the new sails by declaring they were not his, that he had no interest in them, and that he sold with the vessel no sails but the old ones. The bill shews with equal clearness, that Williams, after that prohibition bought them exclusively for himself.  He declared that he got them not for Sheppard, but for his own accommoda-tion; that they were *his property* and Sheppard should not use them; that he would sail the vessel his half of the time with these sails, and then take them off, and let Sheppard sail her his half of the time with the old ones. He not only avowed his ex-clusive property in words, spoken not once hastily to a single person, but deliberately, at different times to many persons, and made all his deeds correspond with his words.  When Shep-pard was about selling his half of the vessel to Sutton, Wil-liams took off the new sails and carried them to Lore's as pri-vate property.  When Sutton seized them there with a search warrant, as belonging to the vessel, Williams claimed them as his separate property and had them delivered up to him as such by the justice on the return of the warrant.  The bill shews

Williams v. Sheppard.

throughout, a settled agreement and understanding as between Williams and Sheppard themselves, that Williams bought the new sails for himself alone, as separate property for his own private use and accommodation, and not for the vessel or her owners; that he had a right to use them on any vessel he pleased, or to sell them at his pleasure.

But as soon as Sutton got half of the vessel into his hands, he, though a third person, advanced a claim to the sails upon this flimsy pretence, that though Williams bought them for himself, he used the *credit* of the owners against their consent. The sails being stored at Ethan Lore's, Mr. Sutton, in order to get them into his possession, made an affidavit before justice Soc-well, in which he swore, or ought to have sworn, for the affidavit is not before us, that he was the owner of the sails, and that they were *stolen* from the vessel; on which affidavit he took out a search warrant, and had not only the sails, but Mr. Lore likewise taken into custody and brought before the magistrate. It is painful to see this high, delicate and tremendous power of searching private dwellings resorted to with any kind of levity. What right had Sutton to the sails? They were not taken away from him, for he never had them in his possession; they were not on the vessel when he purchased, for they were then at Mr. Lore's; he held the vessel under Sheppard, who had ever disclaimed any right to them; he did not buy them of Sheppard, for he expressly refused to sell them with the property: he paid no consideration for them, for Sheppard refused to take any. On the contrary, he knew they belonged entirely to Williams, for Sheppard told him so. and after signing the bill of sale, but prior to delivering it, he held it up in presence of witnesses before Sutton's face, and said, "recollect I don't sell you the new sails, I have no interest in them, only the old ones." All these things appearing in the bill of exceptions, prove to a demonstration, that Sutton had no right to the property. The sails had never been out of Williams' possession from the time they were made. The justice instead of finding any difficulty in the case, immediately discharged Mr. Lore as being no thief, and re-delivered the property to Mr. Williams, as the owner. Yet in the face of this decision, Williams had no sooner got back his property, than Sutton attacked it with another search warrant, and by

this machinery and vexation, without any trial of the right, Williams was brought to surrender his property to Sutton.

The next measure was to set up prosecutions by those tradesmen on their bills, against the former owners, for sails that had been taken up by the captain of the vessel. Their actions could not be resisted, and Sheppard was compelled to pay one half of them, amounting to 144 dollars 30 cents. But having paid the money he brought an action upon it against Williams for so much money paid *to his use at his request.* When the foregoing facts had been given in evidence against Williams in the Common Pleas, his counsel moved the court to instruct the jury that none of the evidence was relevant to the issue ; that being, whether the money was paid at the request of Williams to his use, whereas every captain has a legal power to take up necessaries at the expense of the owners for their vessel, and the evidence shewed these sails were taken for the vessel, and therefore did not apply to the issue. The court thought it did apply to the issue and on that point the case comes before us on a writ of error. In my opinion the Court of Common Pleas was correct. I agree that power and trust are vested in a captain to take up necessaries for a vessel and to have them charged to the owners; but if under color of this necessary power and trust he take up articles not for the vessel but for his own private and exclusive use, and have them charged to the owners, it is a perversion of the trust, and if they have to pay the money, it will be considered in law as money paid to his use at his request, because it is his own act. Suppose the captain has cash of the owners in his hands, (as most captains have) he may expend it in necessaries for the vessel, but if he lay it out in buying goods not for them at all, but for himself, is it not their money paid with his consent to his own use? I do not think it possible to raise a doubt to the contrary. Here was, to say the least of it, some evidence that he bought the sails for himself only, and it was right to leave the fact to the jury ; because if he did so, they paid the money to his use and not to their own. Upon this evidence the jury found it paid to his own use and the judgment was rendered accordingly. Let it be affirmed.

DRAKE, J. concurred.                    Judgment affirmed.

CITED in *Ludlam* v. *Broderick*, 3 *Gr.* 275; *Oliver* v. *Phelps, Spencer* 183; *Associates of Jersey Co.* v. *Davison*, 5 *Dutch.* 418.